**ORIGINAL**

2p cf



IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PAUL TURPIN,<br>   *Petitioner* | Civil No. 1:01-CV-0168 |
| v. | (Judge Rambo) |
| IMMIGRATION and NATURALIZATION SERVICE,<br>   *Respondent* | FILED<br>HARRISBURG<br>APR - 6 2001<br>MARY E. D'ANDREA, CLERK<br>Per_____<br>DEPUTY CLERK |

## BRIEF IN SUPPORT OF AMENDED PETITION FOR WRIT OF HABEAS CORPUS

AND NOW comes the petitioner, Paul Turpin, by his attorney Daniel I. Siegel of the Federal Public Defender's Office, and files this brief in support of Amended Petition for Writ of Habeas Corpus.

### I. Procedural History

Paul Turpin is an inmate at the Pike County Jail, in the custody of the Immigration and Naturalization Service. He has filed a *pro se* petition for habeas corpus relief, alleging that he is held in custody in violation of the Constitution of the United States. The United States Attorney for the Middle District of Pennsylvania, acting on behalf of the Immigration and Naturalization Service, has filed a response discussing the several issues raised by Mr. Turpin.

Mr. Turpin has today filed an Amended Petition for Habeas Corpus, pursuing two of the constitutional claims which have already been addressed by the United States Attorney. At the conclusion of his amended petition, Mr. Turpin verifies, under penalty of perjury, that the factual averments in the amended petition are true and correct. See 28 U.S.C. §1746 (unsworn verifications).

## II. Statement of Facts

Paul Turpin was born on November 28, 1959. His parents, who were citizens of the Republic of Guyana, brought him to the United States in 1961. Mr. Turpin is a lawful, permanent resident of the United States. Members of Mr. Turpin's family are citizens of the United States who live in the United States. His parents, John and Sheila Turpin, are naturalized citizens. They live in Brooklyn, New York, at 53 Chauncey Street. Petitioner's son, Pharaoh Turpin, is an American citizen born in the United States on May 18, 1995. The boy lives with his mother in Queens, New York, at 130-13 135th Place.

In March of 1998, Mr. Turpin was sentenced in New York to a minimum of two years imprisonment on a state charge of burglary in the third degree. Mr. Turpin admits that this conviction qualifies as an aggravated felony under the

Immigration and Nationality Act. Because of this aggravated felony, the Immigration and Naturalization Service instituted proceedings to remove Mr. Turpin from the United States.

On May 10, 1999, an immigration judge ordered Mr. Turpin removed from the United States to the Republic of Guyana. The removal order became final on June 9, 1999. On July 17, 2000, Mr. Turpin was released from state custody and was taken into the custody of the Immigration and Naturalization Service.

In his Amended Petition for Writ of Habeas Corpus, Mr. Turpin raises two constitutional claims. First, he alleges that he is indefinitely detained in violation of the due process clause of the Fifth Amendment. In support of this claim, petitioner notes that despite requests by the United States government, the Republic of Guyana has failed to issue the documents necessary to facilitate removal to Guyana. Mr. Turpin believes that it is unlikely that the Republic of Guyana will facilitate his removal at any time in the foreseeable future. He seeks a court order directing the Immigration and Naturalization Service to grant him release on conditions.

Mr. Turpin's second claim is that he was denied equal protection by a statutory scheme which permits illegal aliens to apply for a "family hardship waiver," but prohibits legal aliens from applying for the same waiver. See §212(h) of the Immigration and Nationality Act, 8 U.S.C. §1182(h). Given the financial and emotional needs of his elderly parents and young son, Mr. Turpin asserts that he would be able to present an arguably meritorious claim for a family hardship waiver. See Petition for Writ of Habeas Corpus, par. 25.

Petitioner argues that by making the family hardship waiver available to illegal aliens while making it unavailable to legal aliens, Congress has created a dichotomy which is irrational and which violates petitioner's right to equal protection of the law under the Fifth Amendment. He seeks an order of court staying removal from the United States until such time as he is provided a meaningful opportunity to apply for the family hardship waiver.

4

### III. Issues Presented

I. IS THE PETITIONER BEING INDEFINITELY DETAINED IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT?

II. GIVEN THE DICHOTOMY IN THE TREATMENT OF LEGAL AND ILLEGAL ALIENS, DOES THE "FAMILY HARDSHIP WAIVER" SECTION OF THE IMMIGRATION STATUTE VIOLATE THE EQUAL PROTECTION COMPONENT OF THE FIFTH AMENDMENT DUE PROCESS CLAUSE?

### IV. Argument

I. THE PETITIONER IS BEING INDEFINITELY DETAINED IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT.

In Kay v. Reno, 94 F.Supp.2d 546 (M.D. Pa. 2000) (Rambo, C.J.), this Court held that where deportation is unlikely, the continued detention of an alien violates the due process clause of the Fifth Amendment. In Kay v. Reno, the Court gave the Immigration and Naturalization Service ninety days to demonstrate that the petitioner's removal was likely in the foreseeable future. If the government failed to meet this burden of proof, the Court indicated that the petition for writ of habeas corpus would be granted and that the Immigration and Naturalization Service would be directed to release the prisoner on conditions.

The record reflects that Mr. Turpin's order of removal became final on June 9, 1999, and that he was taken into Immigration and Naturalization Service custody on July 17, 2000. Mr. Turpin remains in the custody of the Immigration and Naturalization Service. Despite requests by the United States government, the Republic of Guyana has not issued the travel documents necessary to facilitate the petitioner's removal. Given these facts, petitioner has made a prima facie case of illegal detention in violation of the due process clause of the Fifth Amendment.

This Court's holding in Kay v. Reno has not been called into question by any subsequent Third Circuit decision. Petitioner therefore requests that this Court apply the rule of Kay v. Reno, and require the government to come forward with evidence demonstrating that petitioner's removal to Guyana is likely in the foreseeable future. If the government is unable to meet this burden of proof, the petitioner should be ordered released from detention.

II. GIVEN THE DICHOTOMY IN THE TREATMENT OF LEGAL AND ILLEGAL ALIENS, THE "FAMILY HARDSHIP WAIVER" SECTION OF THE IMMIGRATION STATUTE VIOLATES THE EQUAL PROTECTION COMPONENT OF THE FIFTH AMENDMENT DUE PROCESS CLAUSE.

The equal protection issue presented in this case has been noted by the United States Court of Appeals for the Third Circuit, but has been left unresolved. The Third Circuit's discussion of this issue suggests that Mr. Turpin has raised an arguably meritorious claim under the equal protection component of the Fifth Amendment due process clause.

In <u>Catney v. Immigration and Naturalization Service</u>, 178 F.3d 190 (3rd Cir. 1999), the petitioner, a lawful resident alien, had been ordered removed by an immigration judge. Mr. Catney petitioned for review of that order, and his petition was dismissed by the Board of Immigration Appeals. Mr. Catney took an appeal to the Third Circuit, raising several constitutional and statutory claims, including an equal protection claim regarding the "family hardship waiver" at §212(h) of the Immigration and Nationality Act, 8 U.S.C. §1182(h). Specifically, Mr. Catney argued that a recent amendment to §212(h) violated equal protection by irrationally denying relief from deportation to resident aliens who had committed

7

an aggravated felony since their lawful admission to the United States, while affording the opportunity for such relief to aliens who had committed an aggravated felony after their *unlawful* admission to the United States. Id. at 194.

The Third Circuit did not resolve the substantive equal protection issue. The Court of Appeals found that it did not have jurisdiction over a direct appeal from the immigration court, and that it would only have jurisdiction where the alien's claims were raised in a petition for writ of habeas corpus. Id. at 191. The Court of Appeals did note, however, that Mr. Catney had presented a credible equal protection claim, Id. at 191, and that he "argues with some force that there is nothing rational about a law that favors those who have committed at least two crimes - illegal entry to this country and then an aggravated felony - over those who have committed only one - an aggravated felony, following lawful admission to the country." Id. at 195.

The equal protection issue identified in Catney v. Immigration and Naturalization Service is squarely presented in the instant petition for writ of habeas corpus. It is submitted that the statutory scheme created by Congress denies equal protection, and that habeas corpus relief is appropriate. In this

8

regard, petitioner asks this Court to consider the analysis employed by the United States District Court for the Central District of California when, in a similar case, the Court stayed the removal of a lawful alien who had been denied the opportunity to apply for a family hardship waiver:

> [T]here are very logical reasons for treating lawful permanent residents *better* than illegal immigrants. However, in this case, Congress has intentionally (or more probably unintentionally) created a distinction which treats lawful permanent residents *worse* than illegal immigrants. It has created a distinction which therefore places an incentive on being an illegal immigrant rather than a legal immigrant and which punishes those with closer ties to the United States...It is irrational to punish aliens more heavily simply because they have closer ties to the United States.

Song v. Immigration and Naturalization Service, 82 F.Supp.2d 1121, 1133 (C.D.Cal. 2000) (Feess, J.) (internal citations omitted). Consistent with the analysis employed by Judge Feess, petitioner asks this Court to hold that his right to equal protection of the law was violated when he was denied the opportunity to apply for a family hardship waiver. Petitioner further requests that his removal from the United States be stayed until such time as he is provided with a meaningful opportunity to petition for the family hardship waiver.

9

## V. Conclusion

WHEREFORE, it is respectfully requested that the petition for writ of habeas corpus be granted, unless the Immigration and Naturalization Service produces evidence demonstrating that removal to Guyana is likely within the foreseeable future. In the absence of such evidence, it is requested that the Immigration and Naturalization Service be directed to release Mr. Turpin from confinement. It is further requested that Mr. Turpin's removal from the United States be stayed until such time as he is provided with a meaningful opportunity to petition for a family hardship waiver.

Respectfully submitted,

*/s/ Daniel J. Siegel*
DANIEL I. SIEGEL, ESQUIRE
Asst. Federal Public Defender
100 Chestnut Street, Suite 306
Harrisburg, PA 17101
Attorney for Paul Turpin
Attorney ID # 38910

## CERTIFICATE OF SERVICE

I, Daniel I. Siegel, of the Federal Public Defender's Office do hereby certify that on this date I served a copy of the foregoing **BRIEF IN SUPPORT OF AMENDED PETITION FOR WRIT OF HABEAS CORPUS** by hand delivering the same to the following:

> Dulce Donovan, Esquire
> United States Attorney's Office
> Federal Building, Room 217
> 228 Walnut Street
> Harrisburg, PA   17108

and by placing the same in the United States mail, first class in Harrisburg, Pennsylvania, addressed to the following:

> Paul Turpin
> Pike County Jail
> HC 8, Box 8601
> Hawley, PA 18428

Date: April 6, 2001

DANIEL I. SIEGEL, ESQUIRE
Asst. Federal Public Defender
Attorney for Paul Turpin