2 TO CT

● ORIGINAL ●

32
7/24/0

## UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

PAUL TURPIN,           )    Civil No. 1:CV-01-0168
                          )
        Petitioner,    )
                          )    (Judge Rambo)
         v.           )
                          )
IMMIGRATION & NATURALIZATION  )
SERVICE,                  )
        Respondent.    )

FILED
JUL 23 2001
PER _____
HARRISBURG, PA.   DEPUTY CLERK

## RESPONDENT'S MOTION TO DISMISS PETITION
### FOR A WRIT OF HABEAS CORPUS; AND ALTERNATIVELY TO STAY PROCEEDINGS PENDING ADMINISTRATIVE REVIEW OF PETITIONER'S DETENTION PURSUANT TO NEW INTERIM PROCEDURES AND TO VACATE JULY 2, 2001, ORDER

## I. INTRODUCTION

This case involves a criminal alien from Guyana who is in immigration detention pending his removal from the United States to his native country.  A judicial order, in place from January 18, 2001, until July 2, 2001, prevented the Immigration and Naturalization Service ("INS") from removing him.  This Court should dismiss the petition for a writ of habeas corpus and vacate the Memorandum and Order from July 2, 2001, because the "removal period" in petitioner's case did not commence until July 2, 2001, the date this Court entered its final order of removal. Petitioner's current immigration detention is authorized by the Immigration and Nationality Act ("INA"), as interpreted by the Supreme Court in <u>Zadvydas v. Davis</u>, __ U.S. __ , 121 S. Ct. 2491 (2001).

In the event this Court finds that petitioner is not within the six-month period the Supreme Court found to be "presumptively reasonable," then the Court should nonetheless vacate its July 2, 2001 Memorandum and Order, stay proceedings, permit petitioner to make an appropriate request for release, and allow the INS to conduct its newly-established administrative review process. Id. at 2505.

## II. BACKGROUND

Paul Turpin ("petitioner"), is a native and citizen of Guyana who is under a final order of removal, which resulted from his most recent conviction for third degree burglary.  In a Memorandum and Order ("Order") dated July 2, 2001, this Court noted the extensive procedural background of this case, and indicated that the sole issue remaining before the Court is whether petitioner's continued detention pending removal violates his right to due process in light of the Supreme Court's recent decision in Zadvydas v. Davis, 121 S. Ct. 2491 (2001).[1]  The Supreme Court decided in Zadvydas that section 241(a) of the INA,

---

[1] In its July 2, 2001 Memorandum and Order, the Court has chronicled the procedural history of this case in detail, including the fact that the United States District Court for the Southern District of New York transferred petitioner's case to this Court and ordered petitioner's removal stayed until further order of the court.  Order at 1-2.  The Court also explained that respondent filed a response to petitioner's challenge to his custody, and that the current Order resulted from this Court's finding that there was no equal protection violation and the Supreme Court's recently issued Zadvydas v. Davis decision.

2

the provision under which petitioner is now detained, authorizes immigration detention after entry of an administratively final order of removal for a period reasonably necessary to accomplish the alien's removal from the United States.  Zadvydas, 121 S. Ct. at 2504.  The Court further held that six months is a presumptively reasonable period of detention, after which the government's authority to continue the detention depends on whether there is a "significant likelihood of removal in the foreseeable future."  Id.

In its July 2, 2001 order, this Court reasoned that, because Zadvydas established that up to six months' detention is presumptively reasonable and petitioner has been detained since July 17, 2000, "there is a presumption of no significant likelihood of Petitioner's removal in the reasonably foreseeable future that Respondent must rebut in order to continue to detain Petitioner."  Order at 2-3.

The Court then vacated the stay of removal issued by the district court in New York, ordered respondent to provide this Court with evidence supporting the likelihood that petitioner will be removed in the reasonably foreseeable future, and ordered petitioner to provide the Court with evidence assuring his presence at the "moment of removal."  Id. at 3-4.

3

## II. DISCUSSION

### a.  Petitioner's continued immigration detention is authorized by statute.

The Court should deny the instant petition and vacate its order because petitioner's current immigration detention is consistent with applicable statutes and regulations, as interpreted by the Supreme Court in <u>Zadvydas v. Davis</u>, 121 S. Ct. 2491 (2001).  As the Supreme Court recognized, the INS possesses statutory authority to detain aliens, such as petitioner, who are subject to final removal orders, for a period reasonably necessary to bring about their removal from the United States, under section 241(a)(6) of the INA, 8 U.S.C. § 1231(a)(6).  <u>Id.</u> at 2498.

The relevant detention provision governing petitioner's detention is section 241(a) of the INA, 8 U.S.C. § 1231(a), which covers detention following entry of a final removal order.  This provision of the INA generally affords the Attorney General a ninety-day period to accomplish removal.  <u>See</u> INA § 241(a)(1)(A)-(B), 8 U.S.C. § 1231(a)(1)(A)-(B).  Congress has mandated detention of criminal aliens such as petitioner during the ninety-day removal period:  "During the removal period, the Attorney General *shall* detain the alien."  INA § 241(a)(2), 8 U.S.C. § 1231(a)(2)(emphasis added).  Pursuant to section 241(a)(1)(B) of the INA, 8 U.S.C. § 1231(a)(1)(B), the removal period begins on the latest of several occurrences.  In cases in

4

which a stay of removal has been entered, the removal period does not begin until the Court has entered a final order.[2]  "Under no circumstance during the removal period shall the Attorney General release an alien who has been found . . . deportable under section 1227(a)(2) [relating to criminal grounds of deportability] . . . of this title."  INA § 241(a)(2), 8 U.S.C. § 1231(a)(2).  The Act further provides that, in certain circumstances, the Attorney General "may" continue to detain an alien after expiration of the ninety-day removal period:

> An alien ordered removed who is inadmissible under section 212, removable under section 237(a)(1)(C), 237(a)(2), or 237(a)(4) or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

INA § 241(a)(6), 8 U.S.C. § 1231(a)(6).  This latter provision

---

[2] Section 241(a)(1)(B) of the INA states:

The removal period begins on the latest of the following:

(i)   The date the order of removal becomes administratively final.

(ii)  **If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.**

(iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B) (emphasis supplied).

applies to petitioner because he was found removable under section 237(a)(2) of the INA as an alien convicted of an aggravated felony offense.[3]

In <u>Zadvydas</u>, the Supreme Court concluded that the period during which an alien may be detained, after an administratively final order of removal is entered, is limited to that which is reasonably necessary to bring about the alien's removal from the United States.  <u>Zadvydas</u>, 112 S.Ct. at 2505.  The Court recognized six months as a presumptively reasonable period of time to allow the government to accomplish an alien's removal. <u>Id.</u>  The Court further held:

> After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing.  And for detention to remain reasonable, as the period of prior post-removal confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months.  To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

--------

[3] As discussed in the government's initial response to the Show Cause Order ("Government Response"), filed in this Court on February 27, 2001, petitioner was found removable from the United States based upon his most recent conviction, which was for third degree burglary.  Petitioner's conviction qualifies as an aggravated felony under the INA.  <u>See</u> 8 U.S.C. § 1227(a)(2)(A)(iii), 8 U.S.C. § 1101(a)(43)(G).  Therefore, Section 241 of the INA, 8 U.S.C. § 1231, governs petitioner's immigration detention because he has an administratively final order of removal.

6

<u>Id.</u> at 2505.

**b. The 90 day removal period began on July 2, 2001.**

Judicial review is premature in this case, and this Court
should dismiss the petition for a writ of habeas corpus and
vacate the July 2, 2001, Memorandum and Order.  The "removal
period" in petitioner's case did not commence until July 2, 2001,
the date this Court vacated the stay of removal.  The INS then
has a six-month presumptive reasonable detention period to effect
petitioner's removal.  This is the only rational reading of the
statute and the <u>Zadvydas</u> decision, because the INS cannot be
charged with removing an alien when the Court specifically
enjoins it from removing him.  So, in this case it was error to
find that petitioner's physical custody for more than six months
created a presumption that there is "no significant likelihood of
Petitioner's removal in the reasonably foreseeable future."
Order at 3; <u>see</u> 8 U.S.C. § 1231(a)(1)(B).

In petitioner's case, for purposes of calculating the
removal period, judicial review of the immigration judge's
removal order was complete on July 2, 2001, when this Court
determined that petitioner's constitutional claim was not
justiciable, and vacated the stay.[4]  Whether his continued
detention is authorized under INA § 241, as interpreted by the

---

[4] As the Court noted in its Order, petitioner sought reversal
of his removal order based on an equal protection challenge to
Section 212(h) of the INA, 8 U.S.C. § 1182(h).  Order at 1.

7

Supreme Court in <u>Zadvydas</u>, need not be addressed by any court unless petitioner is not removed, or otherwise released from INS custody within, at the earliest, six months from this Court's July 2, 2001 order vacating the stay of petitioner's removal. Indeed, in this case, petitioner's detention remains within the initial ninety-day removal period, during which time the Attorney General is statutorily <u>required</u> to detain him. <u>See</u> 8 U.S.C. § 1231(a)(2). Thus, under the clear language of the statute and the Supreme Court's decision in <u>Zadvydas</u>, the instant petition for a writ of habeas corpus must be dismissed.

> **c. Petitioner could not have been removed during the period from January 18, 2001, until July 2, 2001, when this Court vacated the stay of removal in his case.**

Even though the express statutory language is dispositive, the existence of a judicial order staying petitioner's removal for the past six months also militates in favor of this Court's vacating its order and dismissing the habeas petition. Respondent respectfully disagrees with the Court's finding that petitioner could have been removed from the United States prior to July 2nd. <u>See</u> Order at 3. As discussed above, petitioner's removal was judicially stayed from January 18, 2001 through July 2, 2001, while he sought legal review in federal court of his underlying removal order. Order at 1-2. Without violating that order, the INS could not possibly have removed him during the time the judicial stay was in effect. Putting aside for the

8

moment that the <u>Zadvas</u> decision imposes no presumption against the government, even after the six-month period, there can be no logical underpinning for imposing such a presumption here when the Court has stayed removal.

Nothing in the Supreme Court's opinion in <u>Zadvydas</u> absolves petitioner of the obligation to "provide good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," <u>after</u> six months' detention, following a final and executable removal order.  <u>Zadvydas</u>, 121 S.Ct. 2505.  In this case petitioner has provided the Court with no reason, let alone <u>good</u> reason to believe his removal will not occur in the reasonably foreseeable future.  Any finding that a presumption has arisen, which imposes upon the government an obligation to provide evidence of likelihood of repatriation in the reasonably foreseeable future, in the absence of any initial showing by petitioner, is contrary to the review scheme set out in <u>Zadvydas</u>.  <u>Id.</u>; Order at 3-4.  As part of petitioner's showing, he must set forth his own efforts made to assist in his repatriation to his native Guyana.  In this case, petitioner has presented no evidence that he or his attorneys have contacted the Guyanese consulate and asked it to issue the travel documents necessary to accomplish his removal to Guyana.  Repatriation is a shared responsibility of the alien, his sovereign, and the Attorney General; and, the INA imposes an affirmative obligation

9

on an alien "to make timely application in good faith for travel and other documents necessary to [his] departure," and imposes criminal penalties for a willful failure to do so. <u>See</u> INA § 243(a), 8 U.S.C. § 1253(a)(1). Petitioner cannot be excused from his own obligation to secure travel documents.

> **2. In the alternative, if this Court finds that petitioner is detained beyond the presumptively reasonable six-month period, then it should stay the proceedings pending review of petitioner's continued detention by the INS under newly-promulgated interim procedures.**

**a. Proceedings should be stayed in light of new interim procedures.**

If this Court denies respondent's motion to dismiss, it should vacate its July 2, 2001 order and stay further proceedings to allow the INS to conduct an administrative review of the question whether there is good reason to believe that there is no significant likelihood of petitioner's removal in the reasonably foreseeable future.

**b. The Attorney General has directed the INS to draft regulations and to institute new custody review procedures in light of <u>Zadvydas</u>.**

On July 19, 2001, the Attorney General sent a memorandum, to the Acting Commissioner of the INS entitled <u>Post-Order Custody Review After Zadvydas v. Davis</u> ("Memorandum"). <u>Attachment</u>. The purpose of the memorandum is to "give direction to the INS in handling the situation presented by the Supreme Court's ruling and to ensure that we take all responsible steps to protect the

public." Memorandum at 1. In the memorandum the Attorney
General acknowledges that the Supreme Court's decision in
Zadvydas did not question the authority of the INS to detain an
alien under the existing statutory or regulatory schemes, as long
as "reasonable efforts to remove the alien are still underway,
and it is reasonably foreseeable that the alien will be removed."
Id. at 2. Therefore, the Attorney General directed the INS to
establish a mechanism at the administrative level, which relies
upon the expertise of Executive Branch officials, to assess the
prospects for return of aliens to their designated countries of
removal or deportation. Id.

     In light of the Supreme Court's decision in Zadvydas, and in
order to establish and implement a formal administrative process
to review the custody of thousands of aliens, like petitioner,
who are being detained subject to final orders of removal or
deportation, the Attorney General directed the INS to draft and
present him with appropriate regulations by July 31, 2001. Id.
The regulatory scheme will allow detained post-order aliens to
present claims to the INS that they should be released from
detention because there is no significant likelihood that they
will be removed in the reasonably foreseeable future. Id. Upon
receipt of a substantiated claim, the INS will analyze the
likelihood of removal under the circumstances and information
available. Id. Unless and until the INS determines that there

11

is not a significant likelihood of removal in the reasonably
foreseeable future, the INS will continue to make efforts to
remove the alien, whose detention will continue to be governed by
the existing post-order detention standards. Id.

If the alien has been detained for more than six months from
when a final and enforceable removal order is issued, and the INS
determines that there is no significant likelihood of removal in
the reasonably foreseeable future, then the INS will either
release the alien, subject to conditions that will protect the
public and deter the alien's flight, or determine whether special
circumstances justify continued detention of a particular alien,
even if there is no significant likelihood of removal in the
reasonably foreseeable future.  Id. at 2-3.  The regulations will
also memorialize the alien's obligation to comply with the
removal order and cooperate in the removal effort.  Id. at 3.
Moreover, in making determinations about the likelihood of
removing an alien, the INS will consider its historical record of
removing aliens to the country designated for the particular
alien, allow for the INS to solicit input from the Department of
State in particular cases, and permit an alien an opportunity to
show why his case may differ from other aliens' cases whose
removal is sought to the same country.  Memorandum at 3.

**c.  Interim procedures are now applicable to petitioner's
case.**

In his July 19, 2001 memorandum, the Attorney General also

12

directed the INS to immediately implement interim procedures to ensure compliance with <u>Zadvydas</u>, while still "providing the maximum allowable protection to the American public . . .." Memorandum at 3.  The interim procedures provide for an immediate renewal of efforts by the INS to remove aliens in post-order detention, with a special emphasis on aliens who have been detained the longest. <u>Id.</u>  These interim procedures also require the INS to expeditiously complete its review of files for aliens who have been in post-order detention for 90 days or more, again with priority given to those detained longest.  <u>Id.</u>  As part of the review, the INS is accepting written requests, along with any information the aliens believe support their contentions, by detained aliens who contend that there is no significant likelihood of their removal in the reasonably foreseeable future. <u>Id.</u> at 4.  Within 30 days or less, the INS must respond in writing to any written submission by an alien.[5]  <u>Id.</u>

In light of the recently-changed landscape of post-order detention, and the rapid response by the Attorney General to the Supreme Court's decision in <u>Zadvydas</u>, if the Court does not dismiss the petition as requested in part 1, <u>supra</u>, it should

---

[5] The procedure applies to aliens who have filed petitions for writs of habeas corpus challenging their post-order detention.  Such petitions are treated as requests for "likelihood of repatriation" analyses.  The INS would have so treated petitioner's habeas petition, except that he is within the ninety-day removal period where detention is mandatory and within the six-month presumptively reasonable detention period.

vacate its order and stay proceedings to allow petitioner to apply for release from detention if he believes that there is no significant likelihood of his removal in the reasonably foreseeable future.[6]  Respondent will complete the review of petitioner's case as required by the Attorney General, and issue a written decision.  See Memorandum at 4.

If the INS determines that there is not good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future, then this Court should allow twenty days from the date of the issuance of the INS's decision for petitioner to file a pleading with this Court challenging that finding.  Zadvydas 121 S. Ct. at 2505.  Thereafter, respondent should be given twenty additional days in which to

---

[6] Although exhaustion of administrative remedies is not explicitly required by the terms of 28 U.S.C. § 2241, the doctrine of prudential exhaustion mandates that parties generally exhaust available administrative remedies before seeking relief from the federal courts.  McCarthy v. Madigan, 503 U.S. 140, 144-49 (1992); McKart v. United States, 395 U.S. 185, 193 (1969). The exhaustion rule applies "with particular force when the action under review involves exercise of the agency's discretionary power or when the agency proceedings in question allow the agency to apply its special expertise."  McCarthy, 503 U.S. at 145.  The rule "is based on the need to allow agencies to develop the facts, to apply the law in which they are peculiarly expert, and to correct their own errors."  Schlesinger v. Councilman, 420 U.S. 738, 756 (1975). The rule also "ensures that whatever judicial review is available will be informed and narrowed by the agencies' own decisions."  Id.  The exhaustion requirement also promotes practical concerns of judicial economy because the agency's decision often will end the need for any involvement by the courts.  Id. at 756-57.

file a pleading with this Court rebutting petitioner's contentions, or if information or circumstances have changed, advising the Court that the petitioner has been released from immigration detention. Id.

### III.   CONCLUSION

The petition for a writ of habeas corpus should be dismissed or, in the alternative, the Court should vacate its July 2, 2001 order, and stay the proceedings in petitioner's case to allow petitioner to request, and the INS to apply, its interim custody procedures.

Respectfully submitted,

STUART E. SCHIFFER
Acting Assistant Attorney General
Civil Division

DAVID J. KLINE
Deputy Director

EMILY ANNE RADFORD
Assistant Director

*Joshua Braunstein / DD*
JOSHUA E. BRAUNSTEIN
Office of Immigration Litigation
U.S. Department of Justice
Civil Division
P.O. Box 878
Ben Franklin Station
Washington, D.C.  20044
Telephone: (202) 305-0194
Facsimile: (202) 616-9777

Date: July 23 2001                Attorneys for Respondents

15

Exhibit 1



**Office of the Attorney General**
**Washington, D.C. 20530**

July 19, 2001

MEMORANDUM

TO:        ACTING COMMISSIONER
           IMMIGRATION AND NATURALIZATION SERVICE

FROM:      THE ATTORNEY GENERAL

SUBJECT:   POST-ORDER CUSTODY REVIEW AFTER ZADVYDAS V. DAVIS

The Supreme Court held in <u>Zadvydas v. Davis</u>, 533 U.S. __, 121 S. Ct. 2491 (June 28, 2001), that § 241(a)(6) of the Immigration and Nationality Act (INA), read in light of due process protections for aliens who have been admitted into the United States, generally permits the detention of such an alien under a final order of removal only for a period reasonably necessary to bring about that alien's removal from the United States. The Supreme Court held that detention of such an alien beyond the statutory removal period, for up to six months after the removal order becomes final, is "presumptively reasonable." After six months, if an alien can provide "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the government must rebut the alien's showing in order to continue the alien in detention. Finally, the Supreme Court indicated that there may be cases involving "special circumstances," such as terrorists or other especially dangerous individuals, in which continued detention may be appropriate even if removal is unlikely in the reasonably foreseeable future.

The Supreme Court's ruling will inevitably result in anomalies in which individuals who have committed violent crimes will be released from detention simply because their country of origin refuses to live up to its obligations under international law. Nevertheless, the Department of Justice and the Immigration and Naturalization Service (INS) are obligated to abide by the Supreme Court's ruling and to apply it to the thousands of aliens who are currently in detention after receiving final orders of removal. Because we are thus faced with the possible imminent release of many aliens who have previously been determined to pose a risk to the community, I am issuing this memorandum to give direction to the INS in handling the situation presented by the Supreme Court's ruling and to ensure that we take all responsible steps to protect the public.

The existing post-order detention standards, at 8 C.F.R. § 241.4, provide for an ongoing administrative review of the detention of each alien subject to a final order of removal, allowing for the continued detention of aliens unless the INS determines, among other factors, that their release would not pose a danger to the community or a risk of flight. The Supreme Court's decision did not question the INS's authority to detain an alien, under the existing post-order

detention standards, as long as reasonable efforts to remove the alien are still underway and it is reasonably foreseeable that the alien will be removed. In particular, the decision does not require that an alien under a final order of removal automatically be released after six months if he or she has not yet been removed. Instead, the Supreme Court held that "an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future."

The Supreme Court's decision will require the INS, in consultation with the Department of State, to assess the likelihood of the removal of thousands of aliens to many different countries. The Supreme Court emphasized in its decision the need to "take appropriate account of the greater immigration-related expertise of the Executive Branch, of the serious administrative needs and concerns inherent in the necessarily extensive INS efforts to enforce this complex statute, and the Nation's need 'to speak with one voice' in immigration matters." The Court also stressed the need for the courts to give expert Executive Branch "decisionmaking leeway," to give deference to "Executive Branch primacy in foreign policy matters," and to establish uniform administration of the immigration laws.

The Supreme Court also made it clear that its ruling does not apply to those aliens who are legally still at our borders or who have been paroled into the country (such as the Mariel Cubans). The Supreme Court has held that such aliens do not have due process rights to enter or to be released into the United States, and continued detention may be appropriate to accomplish the statutory purpose of preventing the entry of a person who has, in the contemplation of the law, been stopped at the border.

In accordance with the Supreme Court's admonitions, and pursuant to my authority to interpret and administer the INA, see 8 U.S.C. § 1103(a), I have concluded that it is necessary to establish a mechanism by which the responsible Executive Branch officials will exercise their expert judgment to assess the likelihood of the return of aliens, and will do so in a fair, consistent, and orderly manner in a nationwide detention program that involves thousands of aliens from virtually every country in the world.

I.      Accordingly, in order to carry out my responsibilities under the Supreme Court's decision, I am directing the INS to draft and present to me regulations on or before July 31, 2001, that set forth a procedure for aliens subject to a final order of removal (other than aliens who have not entered the United States or who have been granted immigration parole into the United States) to present a claim that they should be released from detention because there is no significant likelihood that they will be removed in the reasonably foreseeable future. Where the alien has presented and substantiated such a claim, the INS will then make a determination, in light of available information and circumstances, whether there is no significant likelihood of removing that alien in the reasonably foreseeable future. Until the INS makes that determination, or if it determines there is still a significant likelihood of removal, the INS will continue its efforts to remove the alien, and the alien's detention will continue to be governed under the existing post-order detention standards. However, if the alien has already been detained for more than six

months since the removal order became final, and the INS determines that there is no significant likelihood of removal in the reasonably foreseeable future, the INS will either (1) release the alien, subject to appropriate conditions to protect the public safety and to deter the alien's flight; or (2) determine whether there are special circumstances justifying continued detention in a specific case even if there is no significant likelihood of removal in the reasonably foreseeable future.

With respect to determinations as to the likelihood of removal, those regulations should: (a) require the alien to demonstrate his or her ongoing efforts to comply with the removal order and to cooperate in the removal effort (a statutory obligation under INA § 243(a)); (b) provide for the decisionmaking official to consider the Service's historical record in achieving the removal of aliens to the country or countries at issue; (c) provide an opportunity to solicit input from the Department of State regarding the prospects for removal of the alien; and (d) afford the alien an opportunity to show that because of the particular circumstances of his or her case, removal is, to a material extent, less likely than for others being removed to the same country or countries and therefore that there is no significant likelihood of removal in the reasonably foreseeable future. The regulations should also make clear that, as under current regulations, aliens who violate the conditions of their release may be taken back into custody and are subject to criminal prosecution.

I am also directing the INS to develop regulations to address the situations that present special circumstances of the sort identified by the Supreme Court in Zadvydas, such as terrorists or other especially dangerous individuals. Those regulations should: (a) adequately define the categories of aliens who are eligible for detention even if there is not a significant likelihood of removal in the reasonably foreseeable future, and (b) provide constitutionally sufficient procedural protections to those aliens. The INS should develop those standards in consultation with the Civil and Civil Rights Divisions, the Executive Office for Immigration Review, and other federal agencies with relevant expertise.

II.     Until the regulations described in Part I above are published, in order to implement a system of detention in compliance with the Zadvydas decision while still providing the maximum allowable protection to the American public, I further direct the INS to implement the following interim procedures with respect to aliens subject to a final order of removal (other than aliens who have not entered the United States or who have been paroled into the United States). Because of those concerns, any public procedure delaying the immediate effectiveness of these interim procedures would be contrary to the public interest.

1. The INS shall immediately renew efforts to remove all aliens in post-order detention, placing special emphasis on aliens who have been detained the longest.

2. The INS shall expeditiously conclude its ongoing file review for all aliens who have remained in post-order detention for 90 days or more, with priority given to those cases in which the aliens have been detained longest. As part of that review, the INS shall immediately begin accepting

requests, submitted in writing, by detained aliens who contend that there is no significant
likelihood of their removal in the reasonably foreseeable future. Those requests shall be
submitted and considered as part of the existing custody review procedures established by 8
C.F.R. § 241.4. Aliens shall be given the opportunity to submit any information that they believe
supports this contention. Until further procedures are specified, the INS shall treat any alien's
petition for a writ of habeas corpus challenging his post-order detention as such a request for
release under existing review procedures, and the request shall be considered by the INS
accordingly.

3. The INS shall respond in writing, as expeditiously as possible, to any such written
submission, prioritizing the cases of aliens who have been detained the longest. In all cases, the
INS shall respond in 30 days or less. The INS's failure to respond in 30 days will not, however,
automatically entitle the alien to release.

4. No alien who has previously been determined under existing procedures in 8 C.F.R.
§ 241.4 to pose a danger to the community will be released until his or her case has been
processed through the INS review and the INS has made a determination, based on available
information, that there is no significant likelihood of the alien's removal in the reasonably
foreseeable future. If the INS decides that the alien has demonstrated that there is no significant
likelihood of removal in the reasonably foreseeable future but that continued detention is justified
on the basis of special circumstances, it shall include a basic description of those special
circumstances in its written response. Any alien who is released shall be subjected to appropriate
orders of supervision that protect the community and enhance the ability to repatriate the alien in
the future. As provided under the current regulations and recognized by the Supreme Court in
Zadvydas, those orders of supervision shall specify that the alien may be re-detained if he or she
violates the conditions of release.

III.    In order to implement the custody review system I have described, the INS also is directed
to:

1. Collect data on its experience removing aliens to each country in the world. Those data
should include, to the extent possible, the number of aliens removed to each country, the number
of aliens from each country that the INS has not successfully removed, the length of time needed
to achieve removal to each country, and, if known, the reasons why the removal of some classes
of aliens may have taken longer to accomplish than for other aliens from that country, or could
not be accomplished.

2. Confer with the Department of State about problems removing aliens to particular countries
and seek the assistance of the Department of State as appropriate, including in assessing the
likelihood of repatriation of aliens to particular countries.

3. Refer for prosecution appropriate cases: (a) under INA § 243(a) involving aliens who refuse
to make timely application for travel documents or who obstruct their removal; and (b) under

-4-

INA § 243(b) involving aliens who violate their orders of supervision.

The INS is also directed to publish this memorandum in the Federal Register. The public notice shall provide an address for the submission of requests from aliens, as provided in Part II of this memorandum, contending that they should be released from custody because there is no significant likelihood that they will be removed in the reasonably foreseeable future.

## UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PAUL TURPIN, | ) | Civil No. 1:CV-01-0168 |
| Petitioner | ) | |
| | ) | (Judge Rambo) |
| v. | ) | |
| | ) | |
| IMMIGRATION & NATURALIZATION | ) | |
| SERVICE, | ) | |
| Respondent | ) | |

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that she is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania and is a person of such age and discretion to be competent to serve papers.

That this 23rd day of July 2001, she served a copy of the attached

### RESPONDENT'S MOTION TO DISMISS PETITION
### FOR WRIT OF HABEAS CORPUS; AND STAY PROCEEDINGS

by placing said copy in a postpaid envelope addressed to the person hereinafter named, at the place and address stated below, which is the last known address, and by depositing said envelope and contents in the United States Mail at Harrisburg, Pennsylvania.

ADDRESSEE(S)
Dan Seigel, Esquire
Federal Public Defender's Office
100 Chestnut Street
Suite 306
Harrisburg, PA 17101

Dawn L. Mayko
Legal Secretary

4